|   |   |
|---|---|
| UNITED STATES DISTRICT COURT<br>DISTRICT OF PUERTO RICO | |
| LIZ FRECHEL RODRIGUEZ, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>PUERTO RICO DEPARTMENT OF<br>EDUCATION, et al.,<br><br>    Defendants. | Civil No. 06-1095 (JAF) |

**OPINION AND ORDER**

On March 22, 2007, we issued an Opinion and Order on Defendants' motion for judgment on the pleadings,[1] dismissing various causes of action that were originally pleaded in this complaint by Plaintiffs Liz Frechel-Rodríguez ("Liz") and her daughter Shelsey Villalobos-Frechel ("Shelsey"). Docket Document No. 104. Others remained intact. Id. Liz and Shelsey allege that Shelsey was sexually harassed by Morales-Sánchez, a janitor at her grade school. Docket Document No. 1. As of today's writing, the following causes of action remain: (1) a claim against Defendant Puerto Rico Department of Education ("DOE"), alleging violations Of Title IX, 20 U.S.C. §§ 1681 et seq. (2000 & Supp. 2006), and (2) a claim against Lilliam Maldonado, the principal of Shelsey's elementary school, and Angel Gabriel Morales-

---

[1]We modified the March 22, 2007, Opinion and Order in a May 4, 2007, Opinion and Order, after Defendants asked us to reconsider certain aspects of our analysis. See Docket Document No. 111.

Civil No. 06-1095 (JAF)                                                    -2-

Sánchez ("Morales"), a custodian at Shelsey's elementary school, also alleging violations of Commonwealth law. Id. Plaintiffs seek the following relief: (1) an injunction ordering the DOE to take measures to adequately protect Shelsey from being sexually harassed by Morales, (2) $200,000 as compensatory damages for the emotional pain and suffering inflicted upon Shelsey as a result of the alleged incident, (3) $100,000 as compensatory damages for the pain and suffering inflicted upon Liz as a result of the alleged incident, and (4) reasonable attorneys' fees, expert witness fees, and other expenses.[2] Id. Defendants move for summary judgment. Docket Document No. 72-1. Plaintiffs oppose. Docket Document No. 78.

We derive the following factual summary from our March 22, 2007, Opinion and Order, and from the documents the parties have submitted into the case record pursuant to the instant summary judgment proceeding. Docket Document Nos. 1, 72-1, 73, 76-1, 76-2, 76-3, 76-4, 76-5, 76-6, 76-11, 76-12, 85-2, 85-3, 85-4, 85-5, 85-6, 85-7, 85-8, 104.

Morales has been a janitor at John F. Kennedy Elementary School ("JFK Elementary") in Levittown, Puerto Rico, since at least 2003. Around 2003, Imabell Rivera Olivo's daughter Kiara notified her that Morales was continuously following her around the school and that he

---

[2]Plaintiffs' originally asked for other forms of relief as well, but we explained why some of it was not available in our March 22, 2007, Opinion and Order. Docket Document No. 104.

Civil No. 06-1095 (JAF)                                                      -3-

had smashed a cookie into her mouth and told her bad words. Rivera Olivo reported the incident to Maldonado. Docket Document No. 85-8. In their discussions, the two women reached an agreement that Rivera Olivo would not deal with the issue in court. Id. But, Rivera Olivo alleges, neither did Maldonado deal with it informally, and nothing was ever said to Morales. Id.

Around 2004, Haydée Serrano Vargas, who was responsible for two young children attending JFK Elementary, observed Morales sitting with two schoolchildren in the school patio and, to her, it looked as though he was inappropriately touching them. Docket Document No. 85-5. She and a school guard, who also allegedly saw the incident, went to Maldonado's office to report it. Id. Maldonado was not in that day, but someone else in the office took the complaint. Id. Serrano Vargas avers that no investigation ever came of the complaint, and that she was subsequently told it was lost. Id.

Also in 2004, Johanna Fontanez arrived at JFK Elementary to pick up her two daughters, who were students there. Docket Document No. 85-6. When her younger daughter did not emerge from the school at the appointed time, Fontanez went inside to collect her, and, when she asked the girl why she had not come out on her own accord, the girl told her that she was afraid of Morales because he was always looking at her. Id. Fontanez went to Maldonado's office, where she filled out a complaint. Id. Fontanez was never apprised of the result of that complaint. Id.

Civil No. 06-1095 (JAF)                                                         -4-

Finally, in 2005, Wanda De Jesús, who at the time was working as a School Guard at JFK Elementary, testifies that Morales occasionally would fondle his genitalia in front of the children, that he would whistle at them, and that he would say inappropriate things to them. Docket Document No. 85-7. De Jesús also testifies that Morales also played hand games with kindergarten children sitting in his lap. Id. She claims to have told Maldonado about everything she saw, but alleges that Maldonado took no corrective action. Id.

Shelsey attended kindergarten at JFK Elementary from August 2004 until May 2005. On February 4, 2005, while Shelsey was waiting to be picked up from school by her mother, Morales allegedly lifted her skirt with the intention of looking at her underwear ("the skirt-lifting incident").

In March 2005, Liz reported the skirt-lifting incident to Maldonado. During that meeting, Maldonado told Liz first, that she would transfer Morales to another section of the school so that he would have no further contact with the kindergarteners, and second, that she would write to the DOE to inform them of the incident.

Liz transferred Shelsey out of JFK Elementary, and into another school in the district, in August 2005.

Plaintiffs filed the present complaint on January 24, 2006. Docket Document No. 1. Defendant DOE filed its answer on March 20, 2006, Docket Document No. 14, and Defendants Maldonado and Morales filed their answer jointly on May 3, 2006. Docket Document No. 20.

Defendants filed a motion for judgment on the pleadings on August 28, 2006, Docket Document No. 35, and our March 22, 2007, resolution of that motion winnowed down the federal claims present in this case to one, viz., a Title IX action against DOE. Docket Document No. 104. Defendants filed the instant motion for summary judgment on December 15, 2006, Docket Document No. 72-1, and Plaintiffs opposed on December 28, 2006. Docket Document No. 78.

Many arguments briefed by Defendants in their summary judgment motion are duplicative of arguments they already made in their motion for judgment on the pleadings. Docket Document No. 35. Because we have already considered and ruled on these arguments, these swaths of Defendants' summary judgment motion need not be addressed again. Docket Document No. 72-1. The present opinion will, therefore, focus exclusively on what we understand to be the last "live" issue in Defendants' summary judgment motion, which deals with Plaintiffs' Title IX claim against DOE pertaining to the skirt-lifting incident.

The elements Plaintiffs must prove to succeed in their Title IX sexual harassment claim against DOE are: (i) that Shelsey is a member of a protected class; (ii) that Shelsey was subject to unwelcome sexual harassment; (iii) that the harassment was based on sex; (iv) that the harassment was sufficiently severe or pervasive so as to alter the conditions of Shelsey's education and create an abusive educational environment; and (v) that some basis for DOE liability

Civil No. 06-1095 (JAF)                                                -6-

has been established. <u>Brown v. Hot, Sexy and Safer Productions, Inc.</u>, 68 F.3d 525, 540 (1st Cir. 1995).

It is the fifth element of a Title IX harassment claim that Defendants attack in their summary judgment motion. To satisfy the fifth element, Plaintiffs "must prove that a school official authorized to take corrective action had actual knowledge of the harassment, yet exhibited deliberate indifference to it." <u>Frazier v. Fairhaven School Committee</u>, 276 F.3d 52, 66 (1st Cir. 2002)(citing <u>Gebser v. Lago Vista Indep. Sch. Dist.</u>, 524 U.S. 274, 283-84 (1998)).

According to Defendants, the evidence in this case plainly shows that DOE was not deliberately indifferent to Plaintiffs' sexual harassment complaint insofar as DOE conducted an investigation into the skirt-lifting incident pursuant to its Regulations for Filing and Adjudicating Sexual Harassment Complaints in Educational Institutions. <u>Docket Document No. 72-1</u>. Defendants say that this means Plaintiffs cannot satisfy the fifth element and do not have a valid Title IX claim against DOE. <u>Id.</u>

Plaintiffs, on the other hand, challenge Defendants by insisting that DOE's adherence to its Regulations for Filing and Adjudicating Sexual Harassment Complaints in Educational Institutions left much to be desired. <u>Docket Document No. 8</u>. Plaintiffs insist that Defendants were deliberately indifferent in their execution of the sexual harassment investigation because first, investigation deadlines set forth by DOE regulations were regularly flouted, and second, certain

aspects of the investigation, such as the fact that Liz was not allowed to be present at hearings on the issue, were so plainly inequitable as to call the investigation's seriousness into question. Id.

Even if we were to assume, as DOE argues, that it was not deliberately indifferent in its handling of Plaintiffs' sexual harassment complaint, we conclude that we are unable, as DOE requests, to grant summary judgment on that argument alone. Defendants completely fail to address a whole block of other evidence in this case, which is that *prior* to Plaintiffs' filing of their sexual harassment complaint, Rivera Olivo, Serrano Vargas, Fontanez, and De Jesús all filed complaints alleging some sort of sexual harassment against Morales, and that DOE ignored them.[3]

Wills v. Brown University strongly supports our refusal to grant Defendants' summary judgment motion today. 184 F.3d 20 (1st Cir. 1999). In Wills, the First Circuit considered a Title IX action brought by a student against her university for sexual harassment she endured at the hands of her professor. Id. at 23. The sexual

---

[3] We observe that the four affidavits alleging the earlier sexual harassment complaints had not yet been introduced into the record when Defendants moved for summary judgment on the Title IX claim against DOE on December 15, 2006. Docket Document No. 72-1. Plaintiffs submitted the four affidavits into the record pursuant to their opposition to the summary judgment motion on January 24, 2007. Docket Document Nos. 85-5, 86-6, 87-7, 87-8. We granted Defendants the opportunity to file a reply brief to address these new issues on February 8, 2007, but they never did. Docket Document No. 88.

Civil No. 06-1095 (JAF)                                                -8-

harassment the plaintiff suffered occurred in December 1992, and she immediately reported the incident in the form of a written complaint to the university dean.  Id.

It was later revealed, however, that this was not the first such incident, and that another student had previously informed two university employees that she had been sexually harassed by the same professor.  Id. at 24.  Wills sued under Title IX, arguing, inter alia, that the university should have taken stronger action against the professor upon first receiving notice that he had sexually harassed a student in order to protect her from the repeat performance of his behavior that she did, in fact, eventually suffer.  Id.

A jury found in favor of the university, and Wills moved for judgment in her favor notwithstanding the verdict.  Id. at 25.  The district court denied Wills's motion, and Wills appealed.  Id.

In recounting the facts of the case, the First Circuit observed that,

> From the outset, Wills's main claim based on a hostile environment theory has been that [she] was harassed by [the professor] on December 9, 1992, and that [the university] is responsible for [the professor's] wrongdoing under Title IX because [the university] had prior notice of the earlier [] episode but did nothing to prevent the threat to other students such as Wills.

Id. at 26.  Although the above quotation was not Wills' holding, we nonetheless find that the First Circuit's reference to the relevance

Civil No. 06-1095 (JAF)                                                      -9-

of past-incidents evidence lends support to our decision in the instant case that it is logical that evidence of DOE's *past* failures to address sexual harassment complaints leveled against Morales reflect on the question of whether it was deliberately indifferent to whether Morales might sexually harass Shelsey, too – or any other little girl attending JFK Elementary, for that matter.  Assuming a fact finder gives credence to Plaintiffs' evidence that DOE ignored all the previous sexual harassment complaints leveled against Morales, the fact finder might reasonably believe that that information is relevant to whether DOE was deliberately indifferent. Defendants, who claim that Plaintiffs cannot meet the deliberate indifference element of a Title IX claim, have wholly failed to present arguments related to this idea in their summary judgment motion, and we, therefore, conclude that it is ungrantable.

In accordance with the foregoing, we **DENY** Defendants' motion for summary judgment on Plaintiffs' Title IX claim against DOE, Docket Document No. 72-1. Given that this federal claim survives, we continue to exercise supplemental jurisdiction over the Commonwealth claims remaining against Maldonado and Morales.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 9th day of May, 2007.

                                        S/José Antonio Fusté
                                        JOSE ANTONIO FUSTE
                                        Chief U.S. District Judge